Philip and Theresa NORDO, as parents and natural guardians of Joseph Nordo, a minor; and Kimberly and Kevin Doyle, as parents and natural guardians of Ashley Schoener, a minor, Plaintiffs,

v.

SCHOOL DISTRICT of PHILADELPHIA, David W. Hornbeck, Caroline Garvin, and Janet Leach, Defendants.

No. CIV.A. 00–1609.

United States District Court, E.D. Pennsylvania.

April 3, 2001.

Michael J. Dougherty, Dougherty & Brown, Philadelphia, PA, for Plaintiffs.

Glenna Hazeltine, Philadelphia, PA, for Defendants.

### *MEMORANDUM*

BUCKWALTER, District Judge.

Philip and Theresa Nordo as parents and guardians of Joseph Nordo ("Joseph") and Kimberly and Kevin Doyle as parents and guardians of Ashley Schoener ("Ashley") (collectively "Plaintiffs") brought this

action alleging a violation of 42 U.S.C. § 1983 under the "state created danger" doctrine. The defendants are the Philadelphia School District ("School District"), David Hornbeck ("Hornbeck"), Superintendent of the School District during the 1999–2000 school year, Caroline Garvin ("Garvin"), principal of Holme during the 1999–2000 school year, and Elizabeth Leach ("Leach"), a non-teaching assistant at Holme during the 1999–2000 school year (collectively "Defendants").

Previously, Defendants filed a motion to dismiss and the motion was denied. Now before the Court is Defendants' Motion for Summary Judgment (Docket No. 9), Plaintiffs' Response thereto (Docket No. 13), and Defendants Reply (Docket No. 14). For the reasons set forth below, Defendants' instant motion will be granted.

## I. FACTUAL BACKGROUND

Ashley and Joseph were students at the Holme Elementary School ("Holme") of the Philadelphia School District during the 1999–2000 school year. Plaintiffs allege Ashley, who is mentally disabled, was the victim of continuous harassment by fellow students in the school yard before March 2000, although Plaintiffs proffer no evidence of such problems, and apparently never contacted the school in that regard. On March 7, 2000, while at Holme picking up her son, Joseph, after school, Theresa Nordo witnessed students harassing and assaulting Ashley. During the incident, Theresa Nordo directed Joseph to help Ashley, and he too was assaulted. On March 8 and 9, 2000, Theresa Nordo and Kimberly Doyle, Ashley's mother, met with School District representatives, including Garvin. As a result of the incident and the meetings which followed, Garvin suggested Plaintiffs pick up Ashley and Joseph after school at an area of the school other than the playground where the March 7, 2000, incident occurred. Accord-

ing to Kimberly Doyle, the plan worked for the remainder of the school year.

Both Ashley and Joseph experienced additional problems at Holme. On March 10, 2000, Ashley's eye was bruised while Ashley was in the school yard during recess. No evidence indicates the injury was anything but a typical elementary school accident. Ashley and Garvin indicate in their depositions that the eye injury occurred as Ashley stopped to tie her shoe and another child bumped into her. On a later date, Joseph was spit on and punched while standing in a Holme hallway during classes. Joseph was standing near a water fountain with two other boys and one of the boys, who Joseph identified as a friend, tried to spit water on the third boy, squirting Joseph instead. As the situation progressed, the third boy punched Joseph as the boys returned to their classroom. In neither Ashley's eye incident nor Joseph's water incident were the same boys from March 7, 2000, involved.

Plaintiffs allege both Ashley and Joseph suffered psychologically and physically from the incidences. Plaintiffs offer no evidence of Joseph's suffering but they do provide a note from a doctor who suggested Ashley be placed in a private school for children with similar disabilities because of her inability to defend herself from the taunting and physical attacks. Plaintiffs requested to have Ashley and Joseph transferred but a transfer was never effectuated for either of the two, with no apparent mishandling by Defendants.

## II. DISCUSSION

### A. Legal Standard

A motion for summary judgment shall be granted where all of the evidence demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine

issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

If the moving party establishes the absence of the genuine issue of material fact, the burden shifts to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

When considering a motion for summary judgment, a court must view all inferences in a light most favorable to the nonmoving party. *See Diebold,* 369 U.S. at 655, 82 S.Ct. 993. The nonmoving party, however, cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim. *Fireman's Ins. Co. v. DuFresne,* 676 F.2d 965, 969 (3d Cir.1982). To the contrary, a mere scintilla of evidence in support of the nonmoving party's position will not suffice; there must be evidence on which a jury could reasonably find for the nonmovant. *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. 2505. Therefore, it is plain that "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In such a situation, "[t]he moving party is 'entitled to a judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has

the burden of proof." *Id.* at 323, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(c)).

## B. 42 U.S.C. § 1983 and the State–Created Danger Doctrine

 Plaintiffs claim Defendants violated their substantive due process rights by failing to protect Joseph and Ashley from other abusive students. Generally, a state actor has no affirmative obligation to protect a person from injuries caused by others. *DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 195–96, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). There is an exception, however, for the "state created danger." *See Kneipp v. Tedder,* 95 F.3d 1199, 1205 (3d Cir.1996). This exception can be validly raised when the state actor places a plaintiff in a position of danger. *See id.* at 1211. The Third Circuit has determined a state can be held liable under this theory if: 1) the harm ultimately caused was foreseeable by the state actor and fairly direct; 2) the state actor acted in willful disregard for the safety of the plaintiff; 3) there existed some relationship between the state and the plaintiff; and 4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur. *See id.* at 1208. *See also Mark v. Hatboro,* 51 F.3d 1137, 1152 (3d Cir.1995).

### 1. Count I—Joseph Nordo's Claim

██ The first prong of the *Kneipp* test requires a plaintiff to show the harm ultimately caused was a foreseeable and fairly direct result of the state actors' actions. *See Morse v. Lower Merion School District,* 132 F.3d 902, 908 (3d Cir.1997). Here, the Court believes Plaintiffs fail to meet this prong in two respects: 1) the evidence showing Joseph suffered harm is insufficient; and 2) assuming the harm existed, Plaintiffs fail to show the harm

was a foreseeable result of Defendants' actions.

### a. Harm

In their Response to Defendants' Motion for Summary Judgement, Plaintiffs claim Joseph suffered emotionally and psychologically and had to receive medical attention because of his fear of being the target of other students' teasing and physical abuse. Plaintiffs only support these claims with statements made by Theresa Nordo in her affidavit. *See* Plaintiffs' Response at 4. The Court is concerned by this limited evidence for two reasons. First, as articulated *supra,* upon a motion for summary judgment, the nonmoving party cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim. *Fireman's Ins. Co. v. DuFresne,* 676 F.2d 965, 969 (3d Cir. 1982).[1] Second, despite Theresa Nordo's claim that Joseph required medical attention, Plaintiffs did not offer doctor or therapist reports evidencing Joseph's problems and treatment. Treatment reports are typically available to and provided by parties in litigation, as illustrated by Plaintiffs' presentation of a doctor's opinion in support of Ashley's case. In following the standards for summary judgment, and in recognition of Plaintiffs' disregard for providing routine and fundamental evidence on behalf of Joseph, the Court concludes Plaintiffs make an insufficient showing of Joseph's harm, and, thereby fail to establish a necessary element of the first prong of the *Kneipp* test.

### b. Foreseeability

Plaintiffs also fail to establish the Foreseeability element of the first prong. Plaintiffs allege Joseph suffered harm

once on March 7, 2000, when he was assaulted in the playground after school while trying to assist Ashley, and again, on a later date, when he was spit on and punched. Regarding the March 7, 2000, altercation, Plaintiffs do not assert Joseph had problems with other students prior to March 7, 2000, and they offer no evidence showing Defendants knew Joseph previously suffered from harassment and assault. Furthermore, Plaintiffs do not present evidence that Defendants had reason to believe a generally dangerous condition existed in the playground after school. The Court does not believe Plaintiffs meet their burden because without a showing Defendants knew a dangerous condition existed for Joseph or students in general, Plaintiffs cannot show Defendants failure to act foreseeably led to any harm Joseph suffered on March 7, 2000.

Likewise, Plaintiffs do not show Joseph's harm from the spitting incident was the foreseeable result of Defendants' action or inaction. Plaintiffs do not allege Joseph had any problems prior to the spitting incident which occurred under similar circumstances or at the hands of the boys who spit the water and punched him nor do they allege similar problems existed involving other students. Plaintiffs only present the March 7, 2000, altercation alleging it served as notice that the spitting incident could occur. The Court sees no connection. The spitting incident occurred inside the school and during the school day whereas the March 7, 2000, altercation occurred after school, in the playground and because Joseph intervened to help his fellow student, Ashley. Not only are the two situations dissimilar in time and manner, but the aggressors in the two situations

---

1. Although Plaintiffs neglected to cite Theresa Nordo's deposition which was attached to Defendants' motion, the Court notes statements within that deposition are consistent with those made in her affidavit. *See* Defendants' Exhibit "NT Theresa Nordo" at 58. Nonetheless, the Court is left only with Theresa Nordo's statements as evidence of Joseph's harm.

were different students. The two situations are simply too dissimilar and unrelated for the Court to accept the argument that Defendants should have taken measures to protect Joseph after the March 7, 2000, altercation, and that the failure to do so foreseeably resulted in the spitting incident and the psychological problems stemming therefrom.

Plaintiffs show neither harm nor foreseeability, two essential elements of the first prong of the *Kneipp* test. Because a plaintiff must establish all four prongs of the *Kneipp* test to establish a claim under the state created danger theory, *Kneipp*, 95 F.3d at 1208, the Court will not address the remaining three prongs of the test. The state created danger claim brought by Plaintiffs on behalf of Joseph will be dismissed.

### 2. Count II—Ashley Schoener's Claim

■ Plaintiffs' claim on behalf of Ashley will also be dismissed. The Court believes Plaintiffs again fail to establish the foreseeability element of the first prong of the *Kneipp* test as well as the second prong of the *Kneipp* test, willful disregard.

#### a. Foreseeability

The Court does not believe Defendants could have foreseen that their own actions or inaction could have resulted in Ashley being harassed on March 7, 2000, or in the eye injury Ashley suffered on March 10, 2000. First, regarding the March 7, 2000, altercation, Plaintiffs assert Defendants should have taken measures to protect Ashley from abuse in that after-school playground environment because Kimberly Doyle, Ashley's mother, had previously sent a note to school with Ashley which explained Ashley was having trouble in that environment. The only evidence of the note is Kimberly Doyle's affidavit, and as explained· *supra*, the Court does not believe it must accept bald assertions in affidavit testimony as proof of facts. *See* Plaintiffs' Response at 7. Even if the Court accepts Kimberly Doyle's claim that she gave Ashley a note to take to school, there is absolutely no evidence Ashley delivered the note. Thus, the allegation made in the affidavit fails to ensure Defendants were aware of problems and had notice a dangerous situation existed in the playground after school for Ashley or in general.[2] The Court does not find Defendants could foresee their playground dismissal procedures, or lack thereof, could lead to the harassment and assault Ashley suffered on March 7, 2000.

Second, regarding the March 10, 2000, incident which resulted in Ashley's injured eye, Plaintiffs claim Defendants should have taken action to protect Ashley after the incident three days earlier. The Court does not accept the argument that Defendants' failure to take measures to protect Ashley after March 7, 2000, incident foreseeably resulted in the March 10, 2000, incident because the latter was not similar enough or related to the former. The incident on March 10, 2000, occurred during recess, not after school, and there is no evidence it resulted from bullying as opposed to a typical elementary school accidental bumping.[3] Moreover, there is no

---

2. The Court notes Kimberly Doyle specifically stated in her deposition that she did not contact the school about any problems until after and in response to the March 7, 2000, incident, contradicting her affidavit testimony. *See* Defendants' Exhibit "NT Kimberly Doyle" at 63–4.

3. The Court recognizes Ashley's perception and account of what occurred may be unreliable because she is young and disabled; nonetheless, Ashley explains in her deposition that her eye was injured as she was tying her shoe when another student bumped into her. *See* Defendants' Exhibit "NT Ashley Schoener" at 30.

indication the boys who carried out the deplorable acts three days prior had any involvement in the later incident. With respect to Ashley, when considering both March incidences, the Court does not believe Plaintiffs have established the foreseeability element of the first prong of the *Kneipp* test.

### b. Willful Disregard

The Court also believes Plaintiffs fail to establish the second prong of the *Kneipp* test with respect to Ashley's claim. The Third Circuit has explained the second prong "asks whether the state actor acted with willful disregard for or deliberate indifference to plaintiff's safety ... in other words, the state actions must evince a willingness to ignore a foreseeable danger or risk." *Morse*, 132 F.3d at 910. As explained *supra*, the Court does not believe Defendants could have foreseen the March 7, 2000, incident. The willful disregard analysis, therefore, must turn on the actions Defendants took or failed to take after March 7, 2000, when they became aware a dangerous condition existed.

Immediately following the March 7, 2000, incident Garvin met with the students involved in the altercation and their families. Meetings took place on March 8 and 9, 2000, and as a result Garvin implemented a plan to address the after school problems. According to Kimberly Doyle, from the week of March 7, 2000, through the remainder of the school year, Plaintiffs were allowed to retrieve their children from the front office where they would be protected from the activities in the playground at the end of the school day. *See* Defendants' Exhibit "NT Kimberly Doyle" at 67. The implementation of the plan clearly addressed the danger the March 7, 2000, incident brought to the fore and Plaintiffs have provided no evidence the plan did not work. The Court cannot find Defendants to have willfully disregarded the problem when they apparently responded expeditiously and effectively and when Plaintiffs make no showing the measures taken were inadequate.

Plaintiffs also suggest Defendants acted in willful disregard by not transferring Ashley to another school. This assertion also has no merit. First, School District employees informed Kimberly Doyle that Ashley could be transferred to another school within the same cluster as Holme but Kimberly Doyle found those other schools unacceptable. *See id.* at 53–4. Second, Kimberly Doyle never filed transfer papers supplied to her but, rather, she gave them to her lawyer whom she admits may or may not have filed them with the proper office. *See id.* at 54–5. Without evidence Kimberly Doyles' attorney filed the paper work and without evidence Defendants mishandled or rejected a proper filing, the record Plaintiffs present falls far short of establishing Defendants acted in willful disregard. Plaintiffs failure to execute their roles in effectuating a transfer cannot be passed on to Defendants and couched as willful disregard. In light of Defendants' appropriate response to the March 7, 2000, incident and the lack of evidence regarding Defendants' faulty policy and mishandling of transfer procedures, the Court finds Plaintiffs do not meet the second prong of the *Kneipp* test with respect to Ashley's claim.

In finding Plaintiffs establish neither prong one nor prong two of the *Kneipp* test with respect to Ashley's claim, the Court will dismiss Count II of Plaintiffs' Complaint.

## III. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment will be granted.

An appropriate order follows.

### *ORDER*

AND NOW, this 3rd day of April, 2001, upon consideration of Defendants' Motion for Summary Judgment (Docket No. 9), Plaintiffs' Response thereto (Docket No. 13), and Defendants' Reply Brief (Docket No. 14), it is hereby ORDERED that said Motion is GRANTED. Judgment is entered in favor of Defendants School District of Philadelphia, David W. Hornbeck, Caroline Garvin and Janet Leach; and against Philip and Theresa Nordo, as parents and natural guardians of Joseph Nordo, a minor, and Kimberly and Kevin Doyle, as parents and natural guardians of Ashley Schoener, a minor.

This case is **CLOSED**.